IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CRYSTAL J. PARKS                                            PLAINTIFF

         v.                     Civil No. 07-5141

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                     DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Crystal Parks, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XIV of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

      The plaintiff filed her applications for DIB and SSI on January 2, 2002, alleging an onset date of June 30, 2000, due to musculoskeletal and mental impairments. (Tr. 20). An administrative hearing was held on April 2, 2003, and an unfavorable decision followed. On appeal to the Appeals Council, however, the matter was remanded for further consideration. (Tr. 409). A second administrative hearing was held on November 7, 2006. (Tr. 657-697). Plaintiff was present and represented by counsel.

**AO72A**
**(Rev. 8/82)**

At the time of the second administrative hearing, plaintiff was 46 years old and possessed a high school education. (Tr. 93, 108). The record reveals that she had past relevant work experience ("PRW") as a cashier and general office worker. (Tr. 28).

On December 19, 2006, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from a combination of severe impairments, but did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 22). He concluded that plaintiff was insured for DIB through June 30, 2000. (Tr. 23). During that time period, the ALJ found that plaintiff maintained the RFC to perform light work limited by her ability to understand and follow only simple instructions and to adequately interact with coworkers and supervisors and adapt to a routine work environment. With the assistance of a vocational expert, the ALJ determined that plaintiff could perform work as a cleaner/housekeeper, poultry eviscerator, and small products assembler.

Beginning January 3, 2002, the date of plaintiff's SSI application, the ALJ determined that plaintiff could perform light work, limited by her ability to stand and/or walk for up to 4 hours; occasionally use her hands/feet/arms for simple grasping, perform fine manipulation, handle objects, feel objects, and reach; ability to rarely use the hands/feet to push/pull/operate controls; occasionally climb, balance, stoop, and crouch; inability to kneel or crawl; need to avoid concentrated exposure to noise and moderate exposure to heights, moving machinery, chemicals, humidity, dust, fumes, temperature extremes, and vibrations; and; mild limitations with regard to understanding and remembering detailed instructions, responding appropriately to work pressures in a usual setting, and responding appropriately to changes in a routine work

setting. The VE indicated that plaintiff could perform work as a call-out operator and surveillance system monitor. (Tr. 28).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on June 12, 2007. (Tr. 7-9). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 4, 5).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

In the present case, the ALJ determined that plaintiff's mental impairment was, in essence, non-severe or mild, during the time period relevant to her SSI application. (Tr. 23). . At the onset, we note that the Appeals Council remanded this case to the ALJ for reconsideration of plaintiff's mental impairments. The remand order clearly stated the Council's belief that the evidence established the existence of a severe mental impairment. (Tr. 409-410).

"Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001)(citing *Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir. 1996).

Based on our review of the evidence, we believe it was error for the ALJ to determine that plaintiff's mental impairment was no-severe. On June 11, 2002, Dr. John Walters evaluated plaintiff's mental status. (Tr. 335-339). Although plaintiff denied a history of psychiatric treatment, she reported experiencing anxiety attacks a few times a week.[1] She also complained of symptoms including insomnia, fatigue, and decreased concentration. Dr. Walters noted that plaintiff had fair eye contact; was polite and cooperative; had normal psychomotor activity; had spontaneous and normal speech; had a dysphoric, anxious, and tearful affect; had clear, coherent, and goal directed thought processes; and, was well oriented and alert. (Tr. 336). Her immediate and remote memory were grossly intact, but her recent memory was notably impaired. Testing also indicated that her concentration was impaired. (Tr. 337). Dr. Walters stated that plaintiff had limited coping skills and decompensated under stressful situations. He also indicated that stress adversly affected her depression, anxiety, and pain. Dr. Walters diagnosed plaintiff with

---

[1]The record makes clear that plaintiff has a history of depression and has been consistently prescribed anti-depressants. (Tr. 143-334, 336-337, 359-360, 481-482, 516, 532).

panic disorder without agoraphobia and depressive disorder not otherwise specified.  He also assessed her with a global assessment of functioning score of 50.[2]  (Tr. 338).

In May 2006, plaintiff underwent a general physical exam with Dr. William McGowan.  He was of the opinion that plaintiff's depression might worsen her physical limitations.  (Tr. 517).

On October 4, 2006, plaintiff underwent a mental status evaluation with Dr. Cara Hartfield.  (Tr. 540-545).  She noted that plaintiff was pleasant and well groomed, and voiced complaints of lupus, aortic valve regurgitation, mixed connective tissue disease, fibromyalgia, and Raynaud's worsened by stress.  Although plaintiff denied any inpatient or outpatient psychiatric treatment, she indicated that she had been taking antidepressants for years to treat anxiety and panic attacks.  Plaintiff also reported low energy and low self-esteem.  Dr. Hartfield noted that plaintiff was oriented, appeared to be in contact with reality, and could recall five numbers forward and four backward.  Testing revealed a full scale I.Q. of 77, which placed plaintiff in the low average range of intellect.  Dr. Hartfield indicated that plaintiff's I.Q. score was not consistent with her reported educational history.  Further testing also revealed a decline in cognitive functioning.  (Tr. 543).

Dr. Hartfield also administered the MMPI-2 and concluded that plaintiff's test results indicated a severe impairment.  (Tr. 544).  Validity indexing revealed that plaintiff was not over reporting her psychopathology.  Dr. Hartfield stated that plaintiff's personality was characteristic of a person with emotional distress, characterized by dysphoria, worry, anhedonia, and feelings

---

[2]A global assessment of functioning score between 41 and 50 is indicative of severe symptoms or a serious impairment in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

of inadequacy and helplessness. A person with this type of personality would likely be over controlled and fearful of losing control; experience difficulty concentrating; have problems with memory; have low self esteem and no self confidence; experience self doubt; and, have poor judgment. Socially, such persons tended to be somewhat introverted and did not like loud parties or social events. They were likely to feel socially inadequate and have poor health that interfered with their ability to work. Based on this information, Dr. Hartfield diagnosed plaintiff with major depressive disorder, moderate anxiety disorder, and dependent personality disorder. (Tr. 545).

On October 11, 2006, Dr. Hartfield completed a mental RFC assessment. (Tr. 521-523). She concluded that plaintiff had marked limitations in the areas of understanding, remembering, and carrying out short, simple, and detailed instructions; making judgments on simple work-related decisions; and, responding appropriately to work pressures in usual work settings. Plaintiff exhibited moderate limitations in the area of interacting appropriately with supervisors and co-workers. Dr. Hartfield noted that plaintiff's MMPI-2 results indicated extreme sensitivity to criticism as well as low self-esteem. She stated that plaintiff would likely experience an increase in depression, fatigue, and other physical symptoms in response to stress. Dr. Hartfield also reported that plaintiff's persistence was markedly affected, and that her self-doubt would prevent her from trying new activities. (Tr. 522).

While we note Dr. Scott McCarty's 2005 report indicating his belief that plaintiff was malingering, it is clear that his assessment is not supported by the record as a whole. (Tr. 502-506). 20 C.F.R. § 416.927(d)(4) (The Regulations encourage the ALJ to afford more weight to those opinions which are "more consistent with the record as a whole."). Likewise, Dr. Mehdi

7

Sharifien's non-examining, consultative assessment is not entitled to significant weight. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Accordingly, we believe that remand is necessary to allow the ALJ to reconsider the severity of plaintiff's mental impairments and their impact on her ability to perform work-related activities.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of April 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)